## THE BUFFALO.

### CLARK v. THE BUFFALO et al.

#### (Circuit Court of Appeals, Second Circuit. May 23, 1893.)

1. COLLISION—FOG—SCHOONER AT ANCHOR—EVIDENCE.
     A schooner, while lying at anchor in a dense fog in President Roads, Boston harbor, in a proper place, out of the ordinary track of steamers, was struck by a steamer which was moving slowly, and sounding her whistle at proper intervals. The witnesses for the steamer testified that, although they were on the alert for signals, they heard no fog bell on the schooner until a moment before the collision. The schooner's watchman, however, testified that he rang the bell at proper intervals, and her captain swore that after he first heard the bell he went on deck, but shortly returned to the cabin, where he heard the bell sounded every minute or two until the collision. *Held*, that there was no such preponderance of testimony or of probability against the schooner as would warrant reversing a finding in her favor by the district court.

2. SAME—INEVITABLE ACCIDENT.
     Under the circumstances the court could not find that the collision was due to inevitable accident, as the schooner was out of the ordinary track of steamers, in a safe place, and was regularly ringing her bell, the sound of which was capable of being heard.

Appeal from the District Court of the United States for the Southern District of New York.

In Admiralty. Libel by Benjamin J. Clark against the steamship Buffalo, her engines, etc., for a collision; Thomas Wilson, Sons & Co., Limited, being claimants. In the court below there was a decree for libelant. 50 Fed. Rep. 630. Claimants appeal. Affirmed.

James Thomson, for appellants.
Edward L. Owens, for appellee.

Before WALLACE, LACOMBE, and SHIPMAN, Circuit Judges.

SHIPMAN, Circuit Judge. The owner of the schooner Luther A. Roby filed a libel in the district court for the southern district of New York against the steamship Buffalo, to recover damages which the schooner received about 3 o'clock in the morning of August 23, 1891, while lying at anchor in a dense fog in President Roads, in Boston harbor, from a collision with said steamship. This appeal is from the decree of the district court that the libelant recover of the steamship $1,602.08, interest, and costs.

The uncontradicted facts were found by the district court as follows: The Buffalo was outward bound. The weather was clear at a little past 2 A. M., when she left her dock, but, in about 20 minutes after she had got around and headed upon her course, she ran into a dense fog when at Castle island, where the channel is narrow, and does not furnish suitable anchorage ground. She therefore continued on slowly in the first of the ebb tide, sounding her fog whistle, and intending soon to come to anchor. No bell was heard from the schooner, nor was the schooner seen until she was within one or two hundred feet of the Buffalo, when her masts appeared first in the lighter fog above a very little on the Buffalo's port bow, and too near to avoid collision. The Buffalo's engines were thereupon put ahead half speed and her helm hard a-port, which probably prevented greater damage by enabling her to clear the schooner's hull. The schooner, on her way from Hoboken to Boston, anchored, about half past 7 o'clock in the evening before the collision, in a usual and proper place, out of the ordinary path of steamers, in 3¾ fathoms of water. Her anchor light was properly set, and was properly burning at the time of the collision.

The question chiefly in dispute was one of fact, and was whether, during the fog, a bell was properly rung upon the schooner, and ought to have been heard by the officers of the steamship. The witnesses from the steamship heard no bell, although they say that their ears were open, and that they were intent upon hearing sound, until, one witness says, the steamer was almost touching the schooner, or, as the other important witnesses say, right after the collision. There is no doubt that just before the collision, when the watch on the deck of the schooner caught sight of the steamer, he rang the bell violently, which summoned the schooner's captain and some of the crew from below, who reached the deck before the collision. If this was the only ringing of the bell, or if the previous ringing was an occasional and pretended compliance with the rule of conduct applicable to sailing vessels, when not under way, in a fog, such ringing would have been insufficient. The testimony of the watchman and of the captain of the schooner is sufficiently explicit that the bell was rung at proper intervals, and clearly, from the time the fog set in, which was about 20 minutes past 2 o'clock, and about 20 minutes before the collision, until the steamer was seen, and rapid, violent ringing commenced. The captain went on deck when the bell began to ring, returned to his cabin in a few minutes, sat down, heard the bell "every minute and a half or two minutes or so," until he was summoned on deck again by the quick ringing. The sound was capable of being heard at a distance. He heard, when on deck, the bell of the schooner ahead of him.

Although the witnesses for the steamer are experienced, intelligent, and competent mariners, who undoubtedly intended to be prudent in its management, we cannot find that there is a preponderance of testimony or probability in opposition to the find-

ing of the district court, and that, although they did not hear the bell, it was not in fact regularly rung after the fog enveloped both vessels, and was not capable of being heard. Neither can it be found that the collision was caused by inevitable accident, because the schooner was out of the ordinary track of steamers, was anchored in a safe and proper place, was regularly ringing the bell, the sound of which was capable of being heard, and the conditions were not such as to make the accident or calamity an inevitable one.

The decree of the district court is affirmed, with costs.